UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Norton Construction Co.,** | ) | CASE NO. 1:03-cv-02257 |
| *d/b/a* **Norton Environmental** | ) | |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **U.S. Army Corps of Engineers, and** | ) | |
| **Colonel William E. Bulen** | ) | **Memorandum Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

**INTRODUCTION**

This matter is before the Court upon the United States' Motion for Partial Dismissal of the Third Amended Complaint (Doc. 77).  This case arises out of the refusal of the U.S. Army Corps of Engineers (the "Corps") to render a merits decision on Plaintiff Norton Construction Company's permit application under the Clean Water Act.  For the following reasons, the Court GRANTS the motion in part.

1

**BACKGROUND**

Norton Construction Company, d/b/a Norton Environmental ("Norton"), and the Corps are once again before the Court, albeit under somewhat new circumstances.  The following background includes the allegations of Norton's Third Amended Complaint as well as the record from earlier proceedings before this Court.  Norton is an Ohio corporation in the business of solid waste collection, recycling and disposal services for more than 250,000 people in Northeast Ohio.  It seeks to construct a 330-acre landfill, known as the Ridge Sanitary Landfill ("Ridge Landfill"), on the site of an abandoned strip mine in Tuscarawas County, Ohio.  Norton believes that the Ridge Landfill is necessary to control costs, since the landfills it currently uses are near capacity and will be closing over the next few years.

Norton chose the site for the Ridge Landfill in part because it posed a minimal impact on wildlife, wetlands, rivers, streams, prime farmland and mature woodlands.  The 330 acre site contained only 7.19 acres of wetlands and 3455 linear feet of streams that fall within the jurisdiction of the Corps.  Nonetheless, to dredge or fill those waters falling within the Corps' jurisdiction Norton was required to obtain a permit under Section 404 of the Clean Water Act (33 U.S.C. § 1344) and its related regulations.  Norton submitted its completed application to the Corps' Huntington District.

Norton's Complaint notes that federal regulations provide the steps the Corps should follow in processing such applications.  For example, the "district engineer will review applications . . . in accordance with the guidelines promulgated by the Administrator of the U.S. Environmental Protection Agency (40 CFR Part 230) and Section 404(b)(1) of the Clean Water Act and issue a determination granting or denying the application based on such guidelines."  33

CFR § 323.  The statute and regulations require public notice and that notice be published "[n]ot later than the fifteenth day after the date an applicant submits all the information required to complete an application for a permit under this subsection."  33 U.S.C. § 1344(a).  Section 404 requires the consideration of "guidelines developed by the Administrator," which in turn require the Corps to consider whether "the discharge of such materials will have an unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas, wildlife, or recreational areas" as well as a public interest review.  33 U.S.C. § 1344(b); 33 CFR § 320.2(f); 33 CFR § 320.4.

The regulations also state that the Corps "will determine in accordance with the record and applicable regulations whether or not the permit should be issued[,]" "shall prepare a statement of findings (SOF) or, where an EIS has been prepared, a record of decision (ROD), on all permit decisions[,]" and that "[i]f the final decision is to deny the permit, the applicant will be advised in writing of the reason(s) for denial."  33 CFR § 325.2(a)(6)-(7).   The regulations also provide the following regarding the timing of decisions on completed applications:

> (d) Timing of processing of applications. The district engineer will be guided by
> the following time limits for the indicated steps in the evaluation process:
>     *  *  *
> (3) District engineers will decide on all applications not later than 60 days after
> receipt of a complete application, unless
>
> (i) precluded as a matter of law or procedures required by law (see below),[1]

---

[1]   The language "see below" appears to point to the following:

> Certain laws (e.g., the Clean Water Act, the CZM
> Act, the National Environmental Policy Act, the
> National Historic Preservation Act, the Preservation
> of Historical and Archeological Data Act, the
> Endangered Species Act, the Wild and Scenic
> Rivers Act, and the Marine Protection, Research

>   (ii) The case must be referred to higher authority (see § 325.8 of this part),
>
>   (iii) The comment period is extended,
>
>   (iv) A timely submittal of information or comments is not received from the applicant,
>
>   (v) The processing is suspended at the request of the applicant, or
>
>   (vi) Information needed by the district engineer for a decision on the application cannot reasonably be obtained within the 60-day period.
>
>   Once the cause for preventing the decision from being made within the normal 60-day period has been satisfied or eliminated, the 60-day clock will start running again from where it was suspended.

33 CFR § 325.2(d).

After receiving Norton's completed application, the Corps conducted the required hearing and comment steps. However, on October 16, 2002, prior to the Corps' decision, Norton deactivated its application to allow the Ohio Historic Preservation Office, Corps and Ohio EPA additional time to review the project and supplemental data. After these reviews were completed Norton reactivated its permit application on May 16, 2003. The Corps responded with a June 13 letter indicating that it was "withdrawing" the application and "returning it" to Norton in light of Public Law No. 108-7, the Consolidated Appropriations Resolution for fiscal year 2003, 117 Stat. 11 (Feb. 20, 2003), which stated that "None of the funds appropriated in this or any other

---

>   and Sanctuaries Act) require procedures such as state or other federal agency certifications, public hearings, environmental impact statements, consultation, special studies, and testing which may prevent district engineers from being able to decide certain applications within 60 days.

  33 CFR § 325.2(d)(3).

4

Act may be used by the United States Army Corps of Engineers to support activities related to the proposed Ridge Landfill in Tuscarawas County, Ohio."[2]

Norton responded on June 23 that it was not withdrawing its application and requested that the Corps perform its "mandatory duty" to issue or deny the permit in accordance with the standards and procedures set forth in the Clean Water Act and associated regulations. The Corps responded on August 4 that it considered the issue "withdrawn and not pending in my office."

Norton then filed its initial Complaint on November 5, 2003 (Doc. 1). Norton's First Amended Complaint (Doc. 18) had the following seven Counts: 1) Judicial Review Under Administrative Procedures Act; 2) Writ of Mandamus; 3) Declaratory Judgment; 4) Procedural Due Process; 5) Substantive Due Process; 6) Equal Protection; and 7) Separation of Powers. Defendants filed a motion to dismiss (Doc. 22) which the Court granted in part and denied in part (Doc. 27). Relevant to the motion the Court is now considering, Defendants sought to dismiss the Administrative Procedures Act ("APA") claim, the mandamus claim, and the constitutional claims.[3] The Court granted dismissal only as to "that portion of the APA claim that alleges agency action 'unreasonably delayed'" and "plaintiff's mandamus claim" (Doc. 27).

The parties then filed merits briefs (Doc. 47, 52). The Court reviewed the briefs and issued a Memorandum of Opinion and Order which concluded that "the appropriations riders at

---

[2] The same language was included in Section 102 of the Energy and Water Development Appropriations Act of 2004, Public Law No. 108-137 (Dec. 1, 2003) and Section 102 of Division C, Title I of the Consolidated Appropriations Act, 2005, Public Law No. 108-447 (Dec. 8, 2004).

[3] Defendants also argued that the issue was a nonjusticiable political question. They have not repeated that argument here.

issue herein violate plaintiff's equal protection rights and are, therefore, unconstitutional." (Doc. 56). The Court ordered "defendant Corps to reinstate and complete the adjudication of plaintiff's permit application in accordance with the standards and procedures set forth in Section 404 of the Clean Water Act and the regulations promulgated thereunder."

Defendants appealed the Court's decision to the Sixth Circuit Court of Appeals and the Sixth Circuit granted Appellants' motion for a stay pending appeal. While the appeal was pending, the appropriations riders at issue expired and Congress enacted a permanent restriction as part of Public Law No. 109-103, the Energy and Water Development Appropriations Act, 2006, 119 Stat. 2247-2284 (Nov. 19, 2005). Section 103 of Public Law 109-103 ("Section 103") provides as follows:

> In order to protect and preserve the integrity of the water supply against further degradation, none of the funds made available under this Act and any other Act hereafter may be used by the Army Corps of Engineers to support activities related to any proposed new landfill in the Muskingum Watershed if such landfill --
>
> (1) has not received a permit to construct from the State agency with responsibility for solid waste management in the watershed;
>
> (2) has not received waste for disposal during 2005; and
>
> (3) is not contiguous or adjacent to a portion of a landfill that has received waste for disposal in 2005 and each landfill is owned by the same person or entity.

(Doc. 74, Ex. A).

Following the expiration of the appropriations riders and the passage of Section 103, Defendants filed a Suggestion of Mootness And Request For Vacatur with the Court of Appeals. On March 15, 2006, the Sixth Circuit issued an order stating that "[b]ecause the statutory provisions declared unconstitutional by the district court have now expired, the appeal is moot

and the district court's judgment should be vacated." (Doc. 67).

Norton sent the Corps a letter on April 17 explaining that it intended to proceed with the pending Section 404 permit application and demanding that the Corps proceed with the adjudication and processing of the permit.  Following a series of communications back and forth between the parties, the Corps ultimately concluded as follows:

> After careful review of all the information available to the Corps, the Corps has determined the proposed Ridge Landfill project meets all of the funding restriction criteria described in Section 103 of Public Law 109-103.  The enclosed Memorandum For Record sets forth the Corps' process in reviewing the applicability of Section 103 of Public Law 109-103 and the decision that was reached.  As the Army Corps of Engineers cannot process Norton's permit application for the proposed Ridge Landfill, your application is considered not pending in this office.
>
> \*      \*      \*
>
> Upon review of the above, the Corps has determined the proposed Ridge Landfill meets all of the funding restriction criteria in Section 103 of PL 109-103.  Therefore, under Section 103 of Public Law 109-103, the Army Corps of Engineers is prohibited from processing Norton's permit application for the proposed Ridge Landfill.

(Doc. 74, Ex. E).

Norton filed a Second Amended Complaint which was followed by a Third Amended Complaint (Doc. 74).  Norton seeks relief under the following seven Counts: 1) Judicial Review Under The Administrative Procedures Act; 2) Declaratory Judgment And Injunctive Relief; 3) Substantive Due Process; 4) Procedural Due Process; 5) Equal Protection; 6) Separation of Powers; and 7) Alternative Relief - Writ of Mandamus.  Norton summarizes its claims as follows:

> Plaintiff seeks declaratory judgment, injunctive relief and, alternatively, mandamus pursuant to 28 U.S.C. §§ 1361, 2201 and 2202, Section 404 of the Clean Water Act and the relevant provisions of the Administrative Procedures Act, 5 U.S.C. § 701 *et seq*.  Plaintiff first contends that Section 103 of Public Law

7

> No. 109-103 cannot reasonably or lawfully be construed as applying to Plaintiff's Ridge Landfill in Tuscarawas County, Ohio since the term "Muskingum Watershed" is not defined. Alternatively, should the Court declare that Section 103 of Public Law 109-103 applies to Plaintiff's facility, then Section 103 is unconstitutional as violative of Plaintiff's rights to substantive and procedural due process and equal protection under the Due Process Clause of the Fifth Amendment to the United States Constitution, and Section 103 further violates Article II of the United States Constitution. Finally, in either event, Defendants' continuing refusal to adjudicate Plaintiff's permit application under Section 404 of the Clean Water Act and implementing regulations is unlawful and subject to remedy under 5 U.S.C. § 701 *et seq.*

(Doc. 74 ¶5).

Defendants then filed the Motion for Partial Dismissal of the Third Amended Complaint at issue here.

**STANDARD OF REVIEW**

Defendants seek dismissal under Rules 12(b)(1) and 12(b)(6).

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction. "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). "When a 12(b)(1) motion attacks the face of a complaint, the plaintiff's burden to prove federal question subject matter jurisdiction is not onerous." *Musson Theatrical v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). The plaintiff must only show that the federal claim is not frivolous. *Id.* However, where there are disputed issues of fact "no presumptive truthfulness attaches to plaintiff's allegations . . . ." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff. *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999). A claim is not to be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *see also Hammond v. Baldwin,* 866 F.2d 172, 175 (6th Cir. 1989). Notice pleading requires only that the defendant be given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. However, the complaint must set forth "more than the bare assertion of legal conclusions." *Allard v. Weitzman* (*In Re DeLorean Motor Co.*)*,* 991 F.2d 1236, 1240 (6th Cir. 1993). "In practice, a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)). Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489-490 (6th Cir. 1990).

### **DISCUSSION**

Norton argues that this Motion largely parallels the Motion to Dismiss decided by the Court on June 14, 2004 (Doc. 27). Norton posits that the Court's earlier conclusions are the "law-of-the-case" and Defendants are therefore barred from asserting those issues here. The law-of-the-case doctrine involves a court's reconsideration of an issue it has already decided in the same proceedings. *Gillig v. Advanced Cardiovascular Sys., Inc.*, 67 F.3d 586, 589 (6th Cir. 1995). The law-of-the-case doctrine should be distinguished at the outset from the mandate rule. "[T]he mandate rule is a specific application of the law-of-the-case doctrine" that limits the

district court on remand from the court of appeals.  *Scott v. Churchill*, 377 F.3d 565, 570 (6th Cir. 2004).  While the "law-of-the-case doctrine is rigidly applied to enforce a lower court's obedience to a higher court . . . , the doctrine is more flexibly applied to reconsideration of earlier decisions by the same court or a coordinate court."  *United States v. Dunbar*, 357 F.3d 582, 592 (6th Cir. 2004).  Accordingly, in the context of prejudgment rulings by the same court, the law-of-the-case doctrine operates as a guide to the district court's exercise of its discretion in reconsidering earlier rulings.  *Id.* at 593; *see also Scott*, 377 F.3d at 570 (explaining that the doctrine "merely directs a court's discretion, it does not limit the tribunal's power") (internal quotation omitted).

Courts should generally decline to reconsider a previously decided issue unless one of the following circumstances exists: "(1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice."  *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) (citing *Hanover Ins. Co. v. American Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997)).  In this case, the statutory and regulatory framework of the Clean Water Act and APA is virtually identical to what the Court considered in its earlier rulings.  However, some aspects of the case have changed.  First, Norton is now challenging the application of a different, more general statute.  Second, the Corps now admits that its decision that Norton's "application is considered not pending in this office" is a final action that can be reviewed under Section 706(2) of the Administrative Procedures Act ("APA").

1. Relief Under 5 U.S.C. § 706(1)

Plaintiffs aggrieved by final agency action[4] can seek relief under Section 706 of the APA as follows:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--
>   (1) compel agency action unlawfully withheld or unreasonably delayed; and
>   (2) hold unlawful and set aside agency action, findings, and conclusions found to be--
>     (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>     (B) contrary to constitutional right, power, privilege, or immunity;
>     (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>     (D) without observance of procedure required by law;
>     (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
>     (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706.

The Corps first argues that actions under Section 706(1) and Section 706(2) are mutually exclusive.  Section 706(1) deals with a failure to act while Section 706(2) is based on final

---

[4] The Court notes that "final action" is a term with a number of meanings.  As was explained in *Norton v. S. Utah Wilderness Alliance*, the type of "final agency action" that is a prerequisite to review under the APA includes a failure to act.  542 U.S. 55, 62 (2004).  The term "final action" has also been used by the parties and the Court to refer to an action subject to Section 706(2) as opposed to a failure to act under Section 706(1).  Finally, the regulations governing the clean water act define "final action" as the grant or denial of a permit application, i.e., the action Norton claims that the Corps has unlawfully withheld or unreasonably denied.  33 CFR § 325.2(a)(7).

agency action. The Corps acknowledges that it has taken final action with respect to the Ridge Landfill and that Plaintiff can challenge that action under Section 706(2). The Corps further admits that the Court can consider Norton's substantive arguments under the Section 706(2) claim. The Court can consider whether Section 103 applies to the Ridge Landfill, and if so, whether the statute is constitutional. The Corps further posits that in light of its final action and the available relief under Section 706(2), Plaintiff is foreclosed from challenging its actions as "agency action unlawfully withheld or unreasonably delayed" under Section 706(1).

This is the third time the Corps has presented, and the Court rejects, this argument. As the Court has previously explained, "the thrust of plaintiff's allegations is that the 'final action' taken herein is the Corps' definitive decision that it will not process plaintiff's application, i.e., that it will withhold the issuance of a written decision granting or denying said application. Under these circumstances, the Court does not believe plaintiff's arguments are 'patently illogical' or inconsistent." (Doc. 27 p. 23). The Corps' latest action clearly does not provide the form of final action sought by Norton—i.e., the grant or denial of the application—since it states that "your application is considered not pending in this office" because the Corps is "prohibited from processing Norton's permit application for the proposed Ridge Landfill" under Section 103.

The Corps nonetheless cites two cases in support of its argument. The first, *Norton v. S. Utah Wilderness Alliance* ("*SUWA*"), was addressed in detail in the Court's Memorandum of Opinion and Order denying the Corps' Motion for Reconsideration (Doc. 36). The *SUWA* plaintiffs alleged only a failure to act under Section 706(1). 542 U.S. 55, 61 (2004). Accordingly, this Court previously noted that "*SUWA* did not hold that APA actions cannot proceed under both 'unlawfully withheld' and 'final agency action' theories." (Doc. 36 p.14

n.4). Rather, the Supreme Court in *SUWA* addressed the types of "acts" that could form the basis of failure to act claim. *See* 542 U.S. at 63-65. The Supreme Court concluded that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *SUWA*, 542 U.S. at 64 (emphasis in original). While courts can require agencies to make a decision under Section 706(1), they cannot dictate what that decision will be. *Id*. at 65.

The second case cited by the Corps, *Nat'l Assn. of Home Builders v. U.S. Army Corps of Engineers*, noted an "oppose action/compel action dichotomy." 417 F.3d 1272, 1280 (D.C. Cir. 2005). However, that case did not hold that a plaintiff could not simultaneously challenge a failure to act as well as the merits of the decision not to act. The *Home Builders* court simply held that on the facts of the case the plaintiff had alleged an "oppose action" claim that was reviewable under Section 706(2) without regard to the "compel action" requirements.[5] *Id*. at 1281. Because a 706(1) claim was not alleged, the court did not address the issue of incompatible claims.

Norton's Section 706(1) claim asks the Corps to make a decision either granting or denying its application, something it claims the Corps is required to do under governing statutes and regulations. It does not seek to dictate the Corps' conclusion. Moreover, assuming that a duty to grant or deny an application on the merits exists (*see infra*), the Corps' "final decision"

---

[5] The *Home Builders* court also noted that an action under 706(1) is similar to a petition for mandamus and thus guided by a different substantive standard than a 706(2) action. *Home Builders*, 417 F.3d at 1280. Again, the fact that the claims are governed by differing legal standards does not mean that they are mutually exclusive.

13

not to do either under Section 103 (the subject of the Section 706(2) claim) is not the same as a final decision on the merits. *See* note 4, *supra*. Accordingly, the Court once again concludes that Plaintiff's Section 706(1) and 706(2) claims are not inconsistent. Not only is this result compelled by the law-of-the-case doctrine, it is also compelled by logic.[6]

The Corps' next challenge to the Section 706(1) claim is that Norton has not alleged a nondiscretionary duty as required by *SUWA*. An action to "compel agency action unlawfully withheld" under Section 706(1) has its roots in traditional mandamus practice. *SUWA*, 542 U.S. at 63. Thus, "§ 706(1) empowers a court only to compel an agency 'to perform a ministerial or nondiscretionary act,' or 'to take action upon a matter, without directing *how* it shall act.'" *Id*. at 64 (emphasis in original)(quoting Attorney General's Manual on the Administrative Procedures Act 108 (1947)).

The Corps makes a number of arguments that Norton's claims do not involve such a duty. It argues that the statutory framework of Section 404 of the Clean Water Act grants the Corps discretion, since the Secretary "may issue" permits. 33 U.S.C. § 1344(a). It next notes that Section 404 does not set any strict deadlines for issuing permits. The Corps' believes this is critical for two reasons. First, the Corps argues that only date-certain deadlines provide the necessary nondiscretionary duty for an unlawfully withheld claim. Second, the Corps argues that only statutes can provide such a duty. The Corps next attacks the regulations governing permit

---

[6] The Court also rejects the Corps' arguments that the "unreasonably delayed" claim is barred because the Corps has "concluded the matters presented to it . . . . ." *Citing* 33 U.S.C. § 555(b); *In re Int'l Chem Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992). The simple answer is that the final action sought by Norton—to grant or deny the permit—has not been concluded by the Corps.

14

applications.  The Corps cannot deny that certain seemingly mandatory duties exist—e.g., "the district engineer *will* determine in accordance with the record and applicable regulations whether or not the permit should be issued" and "*shall* prepare a statement of findings (SOF) . . . on all permit decisions"[7]—or that the Corps is generally required to "decide on all applications not later than 60 days after receipt of a complete application."  33 CFR § 325.2(d)(3).  Nonetheless, the Corps claims that these duties become discretionary because the Corps need not decide on an application within 60 days when "precluded as a matter of law or procedures required by law (see below)."  *Id.*

The Court addressed these same arguments already and found none of them to have merit.  First, the Court previously decided that a nondiscretionary duty can stem from regulations:

> The Court rejects defendants' argument that a nondiscretionary duty cannot arise from implementing regulations.  In *Buchanan*[*v. Apfel*, 249 F.3d 485, 491 (6th Cir. 2001)], the Sixth Circuit found that the Social Security Commissioner's failure to adhere to its own regulations regarding the various factors to be considered in determining awards of attorney fees was sufficient to confer mandamus jurisdiction, which like the APA also requires the existence of a nondiscretionary duty.  *Buchanan*, 249 F.3d at 491-492.

(Doc. 27 p.18 n.4).

The Corps now argues that *Buchanan* is distinguished by the fact that the statute included language that the agency would act "in accordance with the regulations[,]" whereas in this case the regulations are not referenced in the statute.  However, the *Buchanan* court obviously did not rely on this statutory language, since it appeared nowhere in the case.  Rather, the Sixth Circuit simply referenced the regulations without regard to the statute.  The Corps also cites *Madison-*

---

[7]    33 CFR § 325.2(a)(6) (emphasis added).

*Hughes v. Shalala* for the proposition that "a nondiscretionary [duty] can arise only from a 'statutory mandate.'"  80 F.3d 1121, 1124 (6th Cir. 1996).  However, the *Madison-Hughes* court went on to inquire whether "there is [a] regulation promulgated" that provides a nondiscretionary duty.  *Id*. at 1125.  Thus, *Madison-Hughes* actually supports the Court's earlier decision.[8]

This Court also rejected the argument that only a date-certain deadline can create an "unlawfully withheld" duty.  The Corps' argument focuses again on the *SUWA* decision, which mentioned in passing that a date-certain deadline is indicative of nondiscretionary duty suitable for unlawfully withheld analysis.  542 U.S. at 65.  The Court addressed *SUWA* in a five-page discussion denying the Corps' Motion for Reconsideration, which need not be repeated here.[9]  (Doc. 36, pp. 15-19).  For the same reasons the Court has twice rejected this argument, it does so again.

Finally, the Corps notes that the "60-day clock"[10] addressed by the Court above—and

---

[8]  Thus, the nondiscretionary duty need not arise directly from the statute.  In any event, the Court notes that the permissive language "may issue" merely indicates that the Corps is not required to grant permits.  This language does not mean that the Corps need not reach a decision on a permit application.  Language to the latter effect might read like "may consider" or "may process."

[9]  Just because a nondiscretionary duty can be proved by a date-certain deadline does not mean that a date-certain deadline is necessary to prove a nondiscretionary duty.  Even the few cases to require a date-certain deadline for an unlawfully withheld claim would allow a 706(1) claim to go forward on an unreasonably delayed theory if the background statute and regulations impose a mandatory duty.  *See, e.g., Sierra Club v. Thomas*, 828 F.2d 783, 794-95 (D.C. Cir. 1987).

[10]  The Corps also argues that this deadline is not a date-certain because it is merely "*guided* by the . . . time limits for the indicated steps in the evaluation process."  33 CFR § 325.2(d).  The Court has already explained that a date-certain deadline is not necessary

ultimately the obligation to come to any merits decision on a permit application—is contingent upon the decision not being "precluded as a matter of law or procedures required by law (see below)." 33 CFR § 325.2(d)(3)(i).  Once again, the Court addressed this same argument in an earlier Opinion:

> Defendants argue that the exception to the 60-day time frame for applications that are "precluded by law" is applicable herein and renders the Corps' failure to process and issue a written decision regarding plaintiff's application discretionary.  The Court disagrees.  The central issue presented by plaintiff in this case is whether or not the appropriations riders at issue herein do, in fact, preclude by law the processing of plaintiff's application.  If the Court rejects the Corps' statutory interpretation of the appropriations riders and/or finds that the riders are unconstitutional, the Corps' reliance on the "precluded by law" exception would have been misplaced and the Corps would therefore not have had a lawful basis for withdrawing and returning plaintiff's permit application.  However, if the Court accepts the Corps' statutory interpretation and finds the riders to be constitutional, then the defendants would have been justified in relying on the "precluded by law" exception.  Thus, the Court rejects defendants' reliance on this exception.

(Doc. 27 pp. 18-19).  Again, nothing presented here changes the Court's conclusion.

In sum, the Court once again rejects the Corps' arguments.  The Clean Water Act and related regulations impose a nondiscretionary duty that supports a Section 706(1) claim.[11]

2.  The Mandamus Claim

The parties agree that Norton's mandamus claim is an alternative claim that is only

---

for an unlawfully withheld claim.  The fact that the 60-day clock is a guide does not mean that the Corps does not have a nondiscretionary duty to make a decision to grant or deny a permit.

[11]  The Corps also argues that unlawfully withheld claims and unreasonably denied claims are mutually exclusive.  Norton does not dispute this argument.  Accordingly, the Court agrees with the Corps on this point.

17

available where the plaintiff lacks other adequate means to attain the relief it desires.  *Kerr v. U.S. District Court*, 426 U.S. 394, 403 (1976); *Mt. Emmons Mining Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997); *Western Shoshone Bus. Council v. Babbitt*, 1 F.3d 1052, 1059 (10th Cir. 1993).  Because Norton has adequate remedies under the APA, the mandamus claim is properly dismissed as it was with the Corps' initial Motion to Dismiss.

        3.        The Declaratory Judgment Claim

Norton's Count 2 seeks a declaratory judgment "pursuant to 28 U.SC. § 2201 and the APA, 5 U.S.C. §§ 702 and 706, declaring the rights, obligations and other legal relations of the parties as provided above."  It also seeks a determination that Section 103 violates "Plaintiff's rights to substantive and procedural due process and equal protection under the Due Process Clause of the Fifth Amendment to the United States Constitution and further violates Article II of the United States Constitution . . . ."

The Corps argues in a footnote that this claim must be dismissed because the "Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, is not an independent basis for subject matter jurisdiction; it is merely an additional remedy where the court already has jurisdiction."  Norton responds that it has stated various federal law bases for its claims, including the APA and federal constitutional claims.  The Corps' reply ignores this argument, and instead reiterates its earlier argument, this time in the body of its brief.

The Court agrees that the Declaratory Judgment Act does not create federal jurisdiction of its own right.  *E.g., Herzog v. Secretary of Health, Educ. & Welfare*, 686 F.2d 1154, 1161 n.5 (6th Cir. 1982).  Rather the Court must look to the character of the underlying claims.  *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 463 F.3d 473, 476 (6th Cir. 2006).  Here, the

18

Corps did not even address Norton's claims.  Moreover, the argument in the Corps' moving brief consisted of a conclusory footnote. *United States v. Dairy Farmers of America, Inc.*, 426 F.3d 850, 856 (6th Cir. 2005) (explaining that an issue dropped in a footnote is not properly raised before the Court); *see also Abel v. Keybank USA, N.A.*, 313 F. Supp. 2d 720, 729 n.6 (N.D. Ohio 2004).  The Court therefore denies the Corps' motion as to the declaratory judgment claim.

    4.    The Constitutional Claims

The Corps next asks the Court to strike Norton's independent constitutional claims under Rule 12(f), which provides that "the court may order stricken from any pleading any . . . redundant [or] immaterial . . . matter."  Fed. R. Civ. P. 12(f).  The parties do not dispute that courts frequently allow parties to bring independent constitutional claims along with APA claims that allege a constitutional infirmity.  Rather, the Corps argues that the it will be "prejudiced by needlessly complex and burdensome briefing and argument to address multiple, stand-alone counts."

However, Rule 12(f) motions to strike pleadings as redundant or immaterial are generally disfavored.  *See Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953); *United States v. American Elec. Power Service Corp.*, 218 F. Supp. 2d 931, 936 (N.D. Ohio 2002).  The motion should ordinarily not be granted unless the redundant matter clearly brings nothing additional to the claim.  *Brown & Williamson*, 201 F.2d at 822; *American Elec.*, 218 F. Supp. 2d at 936.  Here, Plaintiff's constitutional claims include numerous allegations that are unique to those claims.

Moreover, 12(f) motions to strike are not typically granted absent a showing of significant prejudice.  5C Charles Alan Wright *et al.*, *Federal Practice & Procedure*, 1382 p.

441 (3d ed. 2004). In this case, if the constitutional claims are truly redundant the Corps' arguments should apply with equal force to the APA and constitutional claims.

### CONCLUSION

For the foregoing reasons, the Corps' Motion to Dismiss is GRANTED in part as to the mandamus claim.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 12/6/06